UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMMON BUNDY; AMMON BUNDY FOR GOVERNOR; DIEGO RODRIGUEZ; FREEDOM MAN PAC; PEOPLE'S RIGHTS NETWORK; and FREEDOM MAN PRESS LLC,<br><br>    Plaintiffs,<br>v.<br><br>ST. LUKE'S HEALTH SYSTEM LTD.; ST. LUKE'S REGIONAL MEDICAL CENTER LTD.; CHRIS ROTH; NATASHA ERICKSON, MD; and TRACY JUNGMAN,<br><br>    Defendants. | Case No. 1-23-cv-00212-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendants' Motion for Attorney Fees. Dkt. 36. Plaintiffs have not responded to the motion and the time to do so has passed.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court GRANTS the Motion.

## II. BACKGROUND

In May 2022, Defendants St. Luke's Health System Ltd., St. Luke's Medical Center Ltd., Chris Roth, Natasha Erickson, MD, and Tracy Jungman, NP (collectively, "St.

Luke's") brought this action in the State of Idaho's Fourth Judicial District Court, alleging a variety of state law claims against Ammon Bundy, Diego Rodriguez, Ammon Bundy for Governor, Freedom Man PAC, People's Rights Network, and Freedom Man Press LLC. Nearly a year later, Bundy filed a Notice of Removal on May 1, 2023 (Dkt. 1), and a Memorandum in Support on May 8 (Dkt. 2). St. Luke's filed its Motion to Dismiss or Remand on May 8, 2023, arguing that subject matter jurisdiction did not exist, and that Bundy removed the case to merely obstruct the state court proceedings. Rodriguez joined the removal action on May 9, 2023. Dkt. 7. A few days later, Bundy responded in opposition to the Motion to Dismiss or Remand. Dkt. 11. St. Luke's then filed its first Motion to Expedite (Dkt. 12) noting it did not intend to reply to its Motion and urging the Court to expeditiously resolve the matter. On May 19, 2023, the Court granted the Motion and remanded the case to the Fourth Judicial District of the State of Idaho in Ada County, noting it would retain jurisdiction over the limited issue of attorney's fees. Dkt. 26, at 9.

Rodriguez subsequently filed a "Notice of Removal" on May 23, 2023. Dkt. 29. Although styled as a notice of removal, the Court construed the motion as a Motion to Reconsider because of the language therein arguing that the Court "overlooked, ignored, and considered moot" the prior petition and issued a "spurious and specious" ruling. *Id.* at 2. St. Luke's responded with a Motion to Remand (Dkt. 30), and Rodriguez responded (Dkt. 32). Because the Court had already remanded the case, it dismissed both Rodriguez's and St. Luke's motions as moot, noting again that it retained jurisdiction over any motion for attorney fees in conjunction with the removal proceedings. Dkt. 35. On June 20, 2023, St. Luke's filed the Motion for Attorney Fees now before the Court. None of the Plaintiffs

responded.

### III. LEGAL STANDARD

In general, each party to a lawsuit bears its own attorney fees unless Congress has provided otherwise through statute. *Hensley v. Eckerheart*, 461 U.S. 424, 429 (1983).

Congress has provided for fee shifting under the statute governing post-removal procedures, 28 U.S.C. § 1447. Pursuant to 28 U.S.C. § 1447(c), an order remanding a case back to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has determined that under § 1447 (c), "the standard for awarding fees should turn on the reasonableness of the removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Under this standard, the court may award attorney's fees when the moving party lacked an objectively reasonable basis for seeking removal. *Mahoney v. Emerson Electric Co.*, 478 F. Supp. 3d 1051,1057 (D. Idaho 2020). "In determining whether attorney fees are appropriate, district courts should consider whether the purpose of the removal was to prolong litigation and/or impose costs on the opposing party." *Id.*

> In the Ninth Circuit, the following evidentiary burdens govern fee motions:
>
> The applicant has an initial burden of production, under which it must produce satisfactory evidence establishing the reasonableness of the requested fee. This evidence must include proof of market rates in the relevant community (often in the form of affidavits from practitioners), and detailed documentation of the hours worked. If the applicant discharges its legal obligation as to the burden of production, the court then proceeds to a factual determination as to whether the requested fee is reasonable.

*Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1077 (9th Cir. 2021) (cleaned up).

MEMORANDUM DECISION AND ORDER - 3

A reasonable rate is the rate that will "compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Vogel v. Harbor Plaza Center, LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018). The calculation of a reasonable fee award involves a two-step process. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, a court calculates the presumptive fee award, also known as the "lodestar figure," by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Id.* (citing *Hensley*, 461 U.S. at 433). Second, in "appropriate cases," the court may enhance or reduce the lodestar figure based on an evaluation of the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), that were not taken into account in the initial lodestar calculation. *Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (cleaned up). The Ninth Circuit has cautioned that there is a "strong presumption" that the lodestar figure represents a reasonable fee and that adjustments upward or downward are "the exception rather than the rule." *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384 (9th Cir. 1990).

## IV. DISCUSSION

To determine whether an award of attorney's fees is appropriate in this case, the Court must first determine whether Bundy and Rodriguez had an objectively reasonable basis for removal. For the following reasons, the Court finds that they did not.

First, Bundy and Rodriguez's grounds for removal were meritless. Federal district courts can only hear cases that arise in diversity or present a federal question. Diversity exists when there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Complete diversity does not exist here. Bundy is a citizen

of Idaho (Dkt. 1, at 1), and each of the St. Luke's parties are citizens of Idaho (Dkt. 6-1, at 8). This fact alone is sufficient to defeat complete diversity and bar removal on that basis. What's more, Bundy himself indicated in his Notice of Removal that both he and St. Luke's are citizens of Idaho. Dkt. 1-1. Bundy was aware that the parties were not completely diverse, but sought removal nonetheless. Removing a case on the basis of diversity with actual knowledge that the parties are, in fact, not diverse, is objectively unreasonable.

Furthermore, there is no basis for federal question jurisdiction in this case. A federal question exists only where a federal law creates the cause of action, or a substantial question of federal law is a necessary element of the complaint. *Coeur d'Alene Tribe v. Hawks*, 933 F.3d 1052, 1055 (9th Cir. 2019). St. Luke's complaint brings only state law claims. And because it is well-established that cases "may not be removed on the basis of a federal defense," Bundy's attempt to remove on that basis was also objectively unreasonable. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)

Finally, Bundy's removal action was riddled with procedural defects. His removal action was not timely—Bundy filed his notice of removal nearly a year after litigation commenced, far exceeding the statutory requirement that he file within thirty days of receipt of service. 28 U.S.C. 1446(b). He failed to meet the pleading standard required for Equal Rights Removal under 28 U.S.C. § 1443. *See* Dkt. 26, at 7–8. He also failed to comply with the filing requirements by omitting a copy of the state court record from his removal. *See* Dist. Idaho Loc. Civ. R. 83.4(d). And he failed to obtain the required consent from corporations and entities Ammon Bundy for Governor, Freedom Man PAC, and Freedom Man Press, which are also parties to this case.

MEMORANDUM DECISION AND ORDER - 5

Just days after the Court issued its order remanding the case to state court, Rodriguez filed a second "Notice of Removal." Because of the arguments set forth therein, the Court construed this "removal" as a Motion to Reconsider.[1] But even if the Court considered Rodriguez's filing as a true Notice of Removal, it still lacked any objectively reasonable basis. As the Court noted in its previous order (Dkt. 31), the Notice presented no colorable argument for the Court's diversity or federal question jurisdiction over the claims at issue, Rodriguez's notice was extremely untimely, and his "removal" did not comply with local rules. *See id.* at n.2. Further, Rodriguez's basis for diversity jurisdiction was his contention that the requirement for complete diversity is "a wholly untrue interpretation" and "spurious and specious interpretation" of the law. Dkt. 29, at 4. In fact, the requirement for complete diversity is well-established law, and Rodriguez's second attempt at removal in contravention of that law just days after the Court explained it in the previous remand order was unreasonable.

Both Bundy's removal and Rodriguez's purported removal were untimely, riddled with procedural defects, and substantively meritless. Further, the timing of these actions raises suspicions about Bundy and Rodriguez's motivations for removal. Bundy filed his notice of removal mere weeks after the state court issued a warrant for his arrest and after a default judgment had already been entered against him in the state court proceedings. Dkt. 36-1, at 3; Dkt. 26, at 7. Rodriguez filed his "removal" the same day as a state court hearing on a motion for contempt against him for numerous alleged violations of a

---

[1] *See* Dkt. 31, at 1–2.

protective order banning threats, harassment, and intimidation of witnesses. Dkt. 36-1, at 4. As a result of the "removal," the state court reset the hearing for a date two weeks later. *Id.*

"The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on parties, and wastes judicial resources." *Martin*, 546 U.S. at 140. Bundy and Rodriguez's removals were "sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Showalter v. Boise Cnty.*, 2022 WL 504220, at *3 (D. Idaho Feb. 18, 2022). This is precisely the conduct that § 1447 (c) was designed to deter. For these reasons, and the reasons described above, the Court finds there was no objectively reasonable basis for removal, and an award of attorney fees is proper.

**A. Lodestar Calculation**

Having established that a fee award is proper here, the Court must next determine the Lodestar figure: the product of the reasonable hourly rate multiplied by the hours reasonably expended. *Hensley*, 461 U.S. at 433.

*1. Reasonable Hourly Rate*

To determine a reasonable hourly rate, the district court looks to hourly rates prevailing in the relevant legal community. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam). Generally, the forum district represents the relevant legal community. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

The relevant legal community in this case is Boise, Idaho, because St. Luke's filed its Amended Complaint in Ada County and Bundy removed the case to the Southern

Division of the District of Idaho. Here, Holland & Hart attorneys for St. Luke's request the following rates: Erik F. Stidham—$540 per hour; Jennifer M. Jensen—$396 per hour; and Anne E. Henderson—$346.50 per hour.

Courts in the District of Idaho have previously recognized reasonable rates not far from the rates St. Luke's requests here. For example, five years ago this Court awarded a partner at Holland & Hart a rate of $435 per hour. *Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC,* No. 4:16-CV-00427-DCN, 2018 WL 2248588, at *2 (D. Idaho May 15, 2018). More than seven years ago, Judge Winmill recognized that Holland & Hart's Boise office regularly billed up to $495 per hour for litigation services. *Balla v. Idaho State Board of Correction*, 2016 WL 6762651 (D. Idaho Feb. 1, 2016).

Further, it has "been this Court's experience that attorneys at regional firms, such as Holland & Hart, charge hourly rates at or near, but not above, the high end of acceptable rates for the Boise area." *LaPeter v. Canada Life Ins. of* America, 2007 WL 4287489, at *1 (D. Idaho Dec. 4, 2007).

Holland & Hart attorney Erik F. Stidham submitted an affidavit stating that the requested rates are reasonable rates in the Boise market, the relevant community where the case was filed. Because the Court has already awarded fees in excess of what Jensen and Henderson are seeking, it need not discuss those requests further. However, it will briefly address Stidham's hourly rate as it is higher than what the Court normally would see.

Stidham has been practicing for more than 30 years, with nearly three decades of that experience in complex litigation. Dkt. 36-2, at 3-4. His standard hourly rate for matters of this nature is $600, but he has voluntarily discounted his request by 10% here. *Id.* at 4,

6. Significantly, the state court has awarded fees at the rates St. Luke's requests in the corresponding state court proceedings for this case. *Id.* at 10. The Court would also note that Stidham and the other attorneys in this case have repeatedly been demeaned and harassed by Bundy, Rodriguez, and their followers. *See* Dkt. 36-1, at 8. Therefore, the desirability of being counsel on this case is, likely, low.

The requested rates for Jensen and Henderson are acceptable. The rate for Stidham is slightly higher than those typically granted by this Court for the Boise market. However, given his experience, the harassment he has been subjected to by Plaintiffs, the rapid growth in the Boise market in recent years, and the Court's desire to issue an award consistent with the corresponding state court award, the Court finds his rate is, likewise, reasonable for this matter.

*2. Reasonable Hours*

Next, the Court must determine the number of hours that are recoverable. The prevailing party has the burden of submitting time records to justify the hours claimed. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), as amended by 808 F. 2d 1373 (9th Cir. 1987). "Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.* (citing *Hensley*, 461 U.S. at 433-34). "Hours that are not properly billed to one's client also are not properly billed to one's adversary. . . ." *Hensley*, 461 U.S. at 434. However, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a

slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Thus, the question here is whether the time spent on this litigation, a total of 43.7 hours by St. Luke's counsel, was reasonable. St. Luke's submitted detailed documentation of all hours worked on this matter, including the date, timekeeper, hours, hourly rate, total amount billed, and a description for each billing entry. Dkt. 36-2, at 9–10. These entries reflect the fact that Bundy and Rodriguez's tactics here required St. Luke's to file several motions, including two motions to dismiss or remand, two motions to expedite, and a motion for clarification. *See generally id*. Time spent on this kind of work is exactly the sort that would properly be billed to a client, and the Court finds that the requested hours are reasonable. At the rates identified above, multiplied by 43.7 hours, Defendants seek an award of $18, 103.05.

**B. Allocation of Fees**

St. Luke's requests that the fee award be allocated as follows:

| Bundy | $8,744.40 |
| Rodriguez | $2,459.25 |
| Bundy and Rodriguez | $6,899.40 |

Bundy filed his notice of removal on May 1, 2023. Dkt. 1. In its Motion for Attorney Fees, St. Luke's explains that it incurred $8,744.40 in connection with Bundy's removal action prior to May 9, when Rodriguez filed his joinder on the removal. Dkt. 36-1, at 11. St. Luke's then attributes the $6,899.40 in fees incurred from May 9–19, 2023, jointly to Bundy and Rodriguez, as both were actively filing in federal court during that time. Finally,

St. Luke's allocates the $2,459.25 in fees accrued after May 19, 2023 (when the Court granted the St. Luke's Motion to Dismiss or Remand), to Rodriguez, because it was forced to respond to his second attempt at removal, which was not joined by Bundy.

Given the timeline of the filings related to the removal actions, the Court agrees with the allocation set forth by St. Luke's and awards attorney fees of $8,744.40 against Bundy, $2,459.25 against Rodriguez, and $6,899.40 against Bundy and Rodriguez jointly.

## V. ORDER

The Court HEREBY ORDERS:

1. St. Luke's Motion for Attorney Fees is GRANTED as outlined above.
2. The Court awards St. Luke's attorney's fees in the amount of $18,103.05.
3. The Court will enter an Amended Judgment reflecting this award.
4. Bundy and Rodriguez have 30 days to comply with this order.

DATED: November 2, 2023

_____
David C. Nye
Chief U.S. District Court Judge